UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| COUNCIL TOWER ASSOCIATION, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:08CV1605 CDP |
| AXIS SPECIALTY INSURANCE CO., | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Council Tower Association owns Council Tower Apartments, a high-rise residential apartment building in St. Louis. In October 2005, the lower seven floors of the decorative brick veneer attached to the east side of the building detached from the wall and fell to the ground. Council Tower filed a claim with its insurance company, defendant Axis Specialty Insurance Company, for the loss. Axis denied the claim. Council Tower filed suit, alleging that the loss was covered and that Axis has no reasonable cause for denying the claim. The parties have filed cross motions for summary judgment, disputing whether the brick veneer failure is a covered loss under the insurance policy. I find that it is not, and will grant Axis summary judgment on all claims.

## Background

Council Tower owns and operates apartments in St. Louis. Axis, an insurance company authorized to do business in Missouri, issued an insurance policy to Council Tower (effective December 1, 2004 through December 1, 2005) insuring an apartment building referred to as "Council Tower Apartments."[1] There is a brick veneer on the east-facing wall of the building that extends almost the entire height of the twenty-seven story building. The veneer rested on steel shelf angles, with a shelf angle placed approximately every other floor of the building. These steel shelf angles were attached to the concrete wall by anchor bolts. In mid-October 2005, the lower seven floors of the brick veneer on the outside of the east side of the building fell to the ground.

Council Tower made a claim for the damage on the day of the fall, and, by letter dated January 29, 2007, Axis formally denied the claim. As part of its investigation of the claim, Axis hired Jim Vavak, an independent insurance adjuster working for GAB Robins North America. Vavak then hired Gerry McIntyre, a structural engineer working for SEA, Ltd., to investigate the cause of the collapse. McIntyre retrieved broken anchor bolts from the site, and sent them to Dr. Robert Carbonara, a metallurgist with SEA, for testing. Under a

---

[1] The policy lists Sansone Group as the named insured. Sansone Group operates the Council Tower apartments for Council Tower. Sansone is Council Tower's agent.

microscope, Carbonara saw fatigue cracking on the bolts he examined. He found that the bolts met the required minimum strength specifications, but that the bolts had fractured progressively, in a way consistent with an increasing load.

Axis denied the claim on the basis that the loss was caused by faulty or inadequate design or construction, an exclusion under the policy. Specifically, Axis stated that the probable cause of the damage was "a failure of the anchor bolts connecting the steel shelf angles that supported the veneer." The anchor bolts failed, according to Axis, because of excessive vertical load caused by differential vertical movement between the concrete wall and the veneer. The excessive load was caused by a failure to provide for this "expected differential movement between the concrete frame and the brick veneer." This, according to Axis' experts, constituted a design and/or construction failure.

In April 2007, Council Tower retained Robert Dossett to prepare a report on the cause of the failure of the east wall veneer. Dossett's report stated that the veneer "has been subjected to the extremes of weather, rain fall, freezing and thawing" for over forty years. Dossett opined that water accumulated at the base of the wall and behind the brick. "Through 40 cycles of freezing and thawing, the brick moved laterally causing the brick to become close to the edge of the shelf angle and the loosening of the metal ties behind the brick." A loss of lateral stability, combined with "the effect of suction on the brick due to negative wind

pressure" caused the brick to come off the shelf angle and "collapse somewhat vertically."

In September 2008, Council Tower brought this suit against Axis for breach of contract and vexatious refusal to pay. An earlier suit for this same denial of coverage was dismissed without prejudice after Council Tower moved for a voluntary dismissal. *Council Tower Ass'n v. Axis Specialty Ins. Co.*, No. 4:07CV1858 CDP (E.D. Mo. July 24, 2008) (order granting voluntary dismissal). After the voluntary dismissal, Council Tower filed this suit in St. Louis Circuit Court, adding adjuster Vavak as a defendant. The case was removed to this court, and, on December 29, 2008, I dismissed Vavak from this case because he was fraudulently joined. The case continued against Axis, the only remaining defendant, for breach of the insurance contract and vexatious refusal to pay under Missouri law.

Under the insurance policy, Axis "will pay for direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." In the "Causes of Loss" section, the policy lists several exclusions from and limitations to coverage. Section B., "Exclusions." reads, in part:

B. Exclusions

    2. We will not pay for loss or damage caused by or resulting from any of the following:
       . . .
      d. (1) Wear and tear;

> (2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
>
>    . . .
>
> (4) Settling, cracking, shrinking or expansion;
>
>    . . .
>
> k. Collapse, except as provided below in the Additional Coverage for Collapse. . . .
>
> 3. We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.
>
>    . . .
>
>    (c) Faulty, inadequate or defective:
>       . . .
>       (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>       . . .
>
>    of part or all of any property on or off the described premises.

Under section B.2.k., "collapse" is excluded, unless coverage is provided for in an additional collapse section. The "Additional Coverage - Collapse" section states:

> D. Additional Coverage - Collapse
>
> The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in D.1. through D.5. below.
>
> 1. We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building insured under this Coverage

>    Form, if the collapse is caused by one or more of the
>    following:
>
>    . . .
>
>    b. Hidden decay;
>
>    . . .
>
>    4. Collapse does not include settling, cracking,
>       shrinkage, bulging or expansion.

Both parties filed motions for summary judgment. Axis' motion argues that the loss is not covered under the insurance policy. The basis of Axis' position is that the failure of the brick veneer on the east side of the building was not fortuitous.[2] Axis also argues that the failure of the veneer was a "loss in progress" because Council Tower was aware of the veneer problem before obtaining the insurance policy from Axis. Axis also argues, in the alternative, that the failure is excluded from coverage under policy provisions that bar losses resulting from faulty design, construction, and maintenance, as well as settling, cracking, shrinking, or expansion. The cause of the failure, according to Axis, was a design

---

[2]The policy held by Council Tower is an "all risk" commercial insurance policy. Such policies cover all "fortuitous losses, unless the policy contains a specific provision expressly excluding the loss from coverage." *Pakmark Corp. v. Liberty Mut. Ins. Co.*, 943 S.W.2d 256, 259 (Mo. Ct. App. 1997). In order for a loss to be covered under an all-risk insurance contract, the loss must be fortuitous. *Mo. Commercial Inv. Co. v. Employees Mut. Cas. Co.*, 680 S.W.2d 397, 400 (Mo. Ct. App. 1984). Axis' argument that the brick veneer failure was not fortuitous is based on the fact that in May 1995, the brick veneer on the west side of the building failed. The parties dispute whether Council Tower, or Council Tower's agent, Sansone, knew or should have known that the east wall veneer would collapse, based on the collapse of the west wall veneer ten years earlier. Because I find that the partial failure of the east wall veneer is not a collapse, and is not a covered loss under the policy, I do not need to address these arguments.

error: failing to account for the differential movement between the shrinking of the wall and the expanding of the brick veneer. Under this theory of failure, the loss is excluded under the design and/or construction exclusion in B.3.c.2.

Even under Council Tower's theory of failure, according to Axis, the loss is excluded. Council Tower's expert, Dossett, claims that the veneer failed because of the accumulation of water at the base of the wall behind the brick. This water froze and thawed over a forty-year period, causing the brick to move laterally, causing lateral instability, which, combined with the force of wind, caused the brick to pull off the shelf angles and fall down vertically. This theory of failure, according to Axis, would be excluded from coverage under the wear and tear exclusion in B.2.d.1.

In its response to Axis' motion, and in its own motion for summary judgment, Council Tower argues that these exclusions do not apply because the loss was covered under the policy's "collapse" provision. Council Tower argues that faulty design resulted in hidden decay in the anchor bolts, leading to a collapse. Council Tower's argument is premised on the fact that there was a "collapse" of the brick veneer. Council Tower argues, first, that there was a faulty, inadequate, or defective design or use of materials. This, according to Council Tower, led to hidden decay (the cracking of the anchor bolts) which led to a collapse. Because the loss is covered under the collapse theory, it argues, the

exclusions relied upon by Axis do not apply. Council Tower further argues that the loss was fortuitous, and, accordingly, that the loss cannot be excluded under a lack of fortuity provision.

In reply to Council Tower's response, and in response to Council Tower's motion for partial summary judgment, Axis argues that the loss is not covered under the "collapse" provision because the partial failure of the brick veneer does not constitute a collapse under Missouri law. Even if it is considered a collapse, Axis argues, the failure was not caused by hidden decay. From the cross motions for summary judgment, responses, and replies there remains a clear, legal question: was there a collapse under Missouri law? This is the only theory of recovery advanced by Council Tower. Because I find that there was no collapse under Missouri law, Axis is entitled to summary judgment on all claims.

## **Discussion**

The standards for summary judgment are well settled. In ruling on summary judgment, the Court views the facts and inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but must set forth by affidavit or other evidence specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). At the summary judgment stage, I will not weigh the evidence and decide the truth of the matter, but rather I need only determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

Council Tower puts forth a single theory of coverage, both in its own motion for partial summary judgment, and in response to Axis' motion: that the failure of the veneer was caused by a design flaw, which caused hidden decay, which resulted in a collapse. Without a "collapse," Council Tower's theory of coverage fails. Whether there was a "collapse" is a matter of law. Therefore, I must initially decide whether the partial collapse of the brick veneer was a "collapse of a building or any part of a building" under the policy. I conclude that the brick veneer on the east side of the building did not "collapse" for purposes of coverage under the "Additional Coverage - Collapse" provision of the policy. There was no Covered Loss, and therefore I will grant Axis summary judgment on all claims.

In an action based on diversity, the interpretation of an insurance policy is a matter of state law. *St. Paul Fire & Marine Ins. Co. v. Schrum*, 149 F.3d 878, 880 (8th Cir. 1998). In Missouri, courts give the language of an insurance contract its

plain meaning, which is "the meaning that would be ordinarily understood by the layman who bought and paid for the policy." *Macheca Transp. Co. v. Phila. Indem. Ins. Co.*, No. 4:04CV178 CEJ, 2008 WL 851295, at *3 (E.D. Mo. March 26, 2008) (quoting *Shelter Mut. Ins. Co. v. Ballew*, 203 S.W.3d 789, 794 (Mo. Ct. App. 2006)). When a contract provision is clear and unambiguous, however, the court need not apply rules of contract construction, and must avoid creating ambiguities that distort the language of the policy. *Macheca*, 2008 WL 851295 at * 4. Whether an insurance policy is ambiguous is a question of law. *Id.* (citing *Gulf Ins. Co. v. Noble Broad.*, 936 S.W.2d 810, 813 (Mo. 1997) (en banc)).

Under Missouri law, the term "collapse" in an insurance policy is considered to be unambiguous. *Williams v. State Farm Fire & Cas. Co.*, 514 S.W.2d 856, 858-59 (Mo. Ct. App. 1974). The meaning of "collapse" in Missouri is "its plain and commonly understood meaning," which is "a falling or reduction to a flattened form or rubble." *Id.* at 859. However, "[c]ertainly not every damage incurred with respect to a building can be said to be a 'collapse.'" *Eaglestein v. Pac. Nat'l Fire Ins. Co.*, 377 S.W.2d 540, 544 (Mo. Ct. App. 1964).

Missouri courts have also considered the meaning of the more specific phrase "collapse of a building or any part thereof." A policy that covers the collapse of part of a building does not, under Missouri law, cover a partial collapse of a part of a building. *Williams*, 514 S.W.2d at 859-60. In *Williams*, the Missouri

Court of Appeals rejected the argument that "or any part thereof" is synonymous with "partial collapse." *Id*. ("The language 'or any part thereof' obviously refers to 'collapse' of a part of a building, not 'partial collapse' of a part or the whole of a building."). As examples of what a collapse of a part of a building might be, the *Williams* court suggests the falling or reduction to rubble of an attached garage, a supporting foundation wall, or a roof. To support this interpretation of "or any part thereof," the *Williams* court cites to *Gage v. Union Mutual Fire Insurance Company*, 169 A.2d 29 (Vt. 1961), where the court held that "[w]here the claim pertains to a collapse of a part of a building, there must be a collapse of that part. A partial collapse of a part is entirely outside the contemplation of the parties to the insurance contract." *Gage*, 169 A.2d at 31.

In this case, the collapse of the lower seven stories of the brick veneer was not a collapse of a part of a building. At most, it was a partial collapse of a veneer wall. In *Gage*, for example, the Vermont Supreme Court, applying the same definition of "collapse" as applied in Missouri, noted that "if a few shingles are blown from the roof – or for that matter, all of them" no one would call that a collapse of a part of a building. *Id*. at 30. However, "if the entire roof fell in" there would be a collapse of a part of a building (the roof). Similarly, in *Heintz v. United States Fidelity & Guaranty Company*, 730 S.W.2d 268 (Mo. Ct. App. 1987), the Missouri Court of Appeals held that, where the insured testified that

- 11 -

"some of the studding, sheathing and lath in the east and west walls of his home had collapsed," there was no "falling down or collapsing of a part of a building" under Missouri law. *Id*. at 269. Here, a part (the lower seven floors) of a part of a building (the decorative brick veneer covering a wall) fell. The entire part (the wall) did not collapse.

To call the failure of the lower seven stories of the brick veneer a "collapse" would not only be inconsistent with Missouri law, it would be out of line with the modern trend in "collapse" coverage. Courts are split on the meaning of "collapse" under a provision like the one in question here. Some courts follow the same line of reasoning as Missouri, and require that there must be a falling down or collapsing of a part of a building in order for there to be a collapse. *See e.g. Gage,* 169 A.2d at 30 (finding "collapse" under Vermont law to be an unambiguous term meaning to "fall together suddenly" or "fall together or into an irregular mass or flattened form . . . ."). Other courts, in what has been called the modern trend, do not require an actual falling down. Rather, these courts require that the structural integrity of the building, or part of the building, be substantially impaired, or that there is a high risk that a collapse will occur. *See Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 972-73 (Ind. 2005) (distinguishing the "traditional definition" where the definition of collapse "typically disallows coverage under an insurance policy where only 'a part of a part' of a building

falls," from the "modern definition" where collapse is defined as a "substantial impairment of the structural integrity of the building or any part of a building." (citations omitted)); *see also Rankin v. Generali – U.S. Branch*, 986 S.W.2d 237, 238 (Tenn. Ct. App. 1998) (noting that, while some courts, including Missouri, consider "collapse" to be an unambiguous term, the modern trend is to "provide coverage if there is substantial impairment of the structural integrity of the building or any part of a building." (citations omitted)).

Thus, even under the "modern trend," an interpretation considered to be more liberal than Missouri law, there would be no collapse here. The failure of the lower seven stories of the brick veneer on the outside of the building in no way substantially impairs the structural integrity of the building as a whole. *See Thornewell v. Ind. Lumbermens Mut. Ins. Co.*, 147 N.W.2d 317, 349 (Wis. 1967) (applying the more liberal view of collapse and finding that a part of a building is in a state of collapse when "the basic structure or substantial integrity of the part is materially impaired so that it cannot perform its *structural function* as a part of the building and is in immediate danger of disintegrating . . . ." (emphasis added)); *see also Macheca*, 2008 WL 851295 at *6 (court emphasized the fact that a part of a building alleged to have collapsed served no structural support to the building, and thus its cracking, deflection and sagging did not constitute a collapse under Missouri law.). Further, there is no allegation, and certainly no evidence, that the

failure of the lower seven floors of the veneer substantially impaired the structural integrity of the brick veneer as a whole. The remaining veneer is still standing today, over four years after the failure of the lower seven floors.

The partial failure of the brick veneer is not a "collapse" of a part of a building under Missouri law. It is, if anything, a partial collapse of a part of a building. Because Council Tower's theory of recovery is premised on the fact that there was a collapse, Axis is entitled to summary judgment on the issue of coverage. Accordingly, Axis is entitled to summary judgment on Council Tower's vexatious refusal claim. There is no coverage under the policy, and I will grant Axis summary judgment on both counts.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#61] is granted.

**IT IS FURTHER ORDERED** that plaintiff's motion to supplement [#88] is granted.

**IT IS FURTHER ORDERED** that plaintiff's motion for partial summary judgment [#59] is denied.

**IT IS FURTHER ORDERED** that plaintiff's motion to strike [#56] is denied as moot.

**IT IS FURTHER ORDERED** that defendant's motions to exclude testimony [#53 and #55] are denied as moot.

A separate judgment in accord with this Memorandum and Order is entered this same day.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 12th day of November, 2009.